CASE No. 930.

JENNINGS v. TEAGUE.

1. A power of sale conferred by will upon the executors, may be exercised by a sole qualified executor.

2. Power was given to executors by will, executed in 1861, to sell real and personal property "so soon as the value of property shall recover from the depression caused by the existing war;" testator died in 1863, and the sole qualified executor made sale of the lands for confederate money in October, 1863. *Held*, that the executor was the proper judge of whether the contingency had happened, and, there being no grounds to suspect him of having acted contrary to his honest judgment, the sale was valid.

Before CARPENTER, J., Edgefield, May, 1877.

The Circuit decree is as follows:

In this cause a bill was filed by W. D. Jennings, who sued in that behalf as the next friend of the following children, minors: B. F. Calhoun, W. E. Calhoun, P. A. Calhoun, A. G. Calhoun, P. E. Calhoun, of whom he was subsequently appointed guardian *ad litem*, and by Robert Middleton and his wife, M. E. Middleton, M. A. Calhoun, G. C. Calhoun and T. T. Calhoun, on May 18th, 1868, in the Court of Equity for Edgefield against Abner G. Teague, executor of the last will and testament of P. L. Calhoun, and William A. Martin.

The bill alleges the death of P. L. Calhoun in 1863, leaving as his heirs-at-law the Calhouns before mentioned, and Mrs. M. E. Middleton, formerly Calhoun; and of force his last will and testament, in which, among other things, he devised " that his executors should sell all his estate, both real and personal, of what nature or quality soever it may be so soon as the value of property shall recover from depression caused by the existing war, and after paying all his just debts, distribute the remainder between his heirs-at-law aforesaid;" that Teague only qualified as executor, and sold on October 27th, 1863, the entire personalty and realty for Confederate currency, and on the same day

sold a tract of land in said county for $32,000, Confederate currency, to defendant Martin, and gave possession to him; that testator left choses in action for large amounts which passed into the hands of the executor.

The bill alleges that in the sale the executors totally disregarded the letter and meaning of the will and the urgent objections of some of plaintiffs, and that the Confederate currency was then depreciating, and has since become entirely worthless, and that Teague has since become insolvent. The bill prays that Teague be held to a strict account for his alleged violation of the terms of the will and for his administration; that the sale of the personalty and the realty be declared null and void and without legal consideration, that the *titles* given to Martin be declared null and void and be canceled, and that Martin account for the rents and profits of the realty he purchased. Subpœna and relief are prayed against the executor and Martin only.

The executor died without answering, and the plaintiffs, by amendments, made his executrix, Narcissa M. Teague, a party defendant, who answered, averring her ignorance as to many of the allegations of the bill, claiming that the executor managed the estate according to his best judgment, that any loss which the devisees or legatees may have sustained is not attributable to the bad management of the executor; claims strict proof of allegations of executor's disregard of the discretion allowed him by the terms of the will, and the objections of some of the plaintiffs; refers to the Probate office for sales and action of the executor, alleges that executor was discharged from all liability to the devisees, legatees and others interested in the estate, by letters dismissory granted by the Probate judge, and that executor died insolvent and bankrupt.

Martin answered, alleging the refusal of G. C. Calhoun to qualify as executor; that the sale of the realty was made by Teague, executor, after public notice and due advertisement at public outcry; that he paid the purchase money to and received conveyance from Teague, executor. That Mrs. M. A. Calhoun, widow of testator and one of plaintiffs, executed to him renunciation of all interest and estate, and all right and claim of dower therein, before the said W. D. Jennings as notary public;

and that said conveyances were duly recorded in the register of mesne conveyance; that Teague had the legal right and power under the will to sell and convey, and that in so doing he did not in any wise disregard the letter and meaning of the will, which invested him with the power of deciding when "the value of property had recovered from the depression caused by the war," and that in point of fact the value of property at the time of the sale had recovered from the depression existing at the date of the will, August 1st, 1861, and that the sale of the real and personal estate was made with the advice and approval of the very intelligent appraisers of the property.

He further answered, that if any of the plaintiffs really questioned the power or the judicious exercise of the power of the executor, they could, and in good conscience should, (if they ever intended to test the question,) having ample time and notice between the advertisement and the sale, have resorted to the court of equity then, before innocent third persons were entrapped into becoming purchasers, or should at least have given public notice of their objections, which was not done, and is not by the allegations of the bill pretended to have been done; or should have settled the question against the sale then, if they had really wished, by G. C. Calhoun, complainant, qualifying as executor and thereby rendering Teague powerless to sell without his co-operation; that several of the complainants sanctioned and encouraged the sale by becoming purchasers, some of them to very large amounts; that from the proceeds of the sale large sums of money were paid to and expended for complainants by the executor without any objection from them and in satisfaction of debts due by the estate to creditors, W. D. Jennings being among the number.

That Confederate currency was the only currency in the state, and was paid and received in a *bona fide* business transaction apart from and having naught to do with politics or war; the consideration was legal, the contract executed, and that it is alike against private right or public policy for the courts to annul the transaction, and that if plaintiffs have any equities they must be restricted in their assertion to remedies against Teague only; and that complainants have waited until Teague has become in-

solvent. He further averring formally and fully that he is an innocent *bona fide* purchaser for value without notice, claims the benefit thereof of lapse of time, of the statute of limitations, of general demurrer, and of the fact that plaintiffs, if they had any remedy, had it at law, and asks that the bill be dismissed.

It was referred by consent to A. J. Norris, esquire, of the Edgefield bar, to take and report the testimony.

His report, and the documentary evidence introduced, show that the advertisement of sale was regularly published in papers of large circulation, and stated that further information would be cheerfully given by addressing the executor or the plaintiffs, T. T. Calhoun, Robert H. Middleton or Dr. W. D. Jennings.

· That no objection was made to the sale by any of the devisees or legatees within the knowledge of the purchaser Martin; that the sale and conveyance by the executor, and the renunciation by the widow, plaintiff, were *bona fide* and regular; that at the sale purchases were made by plaintiffs, Mrs. Mary Calhoun, R. H. Middleton, P. L. Calhoun, Dr. W. D. Jennings, J. F. Calhoun and T. Calhoun, and by the executor's accounts passed before the Ordinary, payments, some of them very large, were made to some of the plaintiffs and to creditors of the estate, all of whom have not yet been paid.

On well-settled principles of law, even if the executor unquestionably exceeded his powers, the conduct of the adult complainants would seem to estop them from the relief sought. *Bank* v. *Campbell,* 2 *Rich. Eq.* 190; *Parks* v. *Jennings,* 14 *Rich. Eq.* 319.

The evidence developed a conflict of opinion as to whether property at the time of the sale had recovered from the depression caused by the war at the date of the will (the time to be regarded. *Tidyman* v. *Rose, Rich. Eq. Cas.* 298,) arising principally from the element of Confederate currency. Its nominal value in dollars had certainly increased.

The testimony shows that Teague was a good financier, an able manager of money; men acted as he did with their own estates, with the same lights before them.

The actual wisdom of the sale then was in the future. The disinterested appraisers of the property, George D. Tillman,

George W. Morgan and W. L. Parks, in writing, advised and approved : " In view of all the circumstances, the situation of the country, the condition of the currency, and for the good of all parties, that the executor should sell the estate for cash in Confederate money. That if the property were sold on time and the purchase money secured by notes payable in coin after the war, they thought it would be sacrificed."

As early as 1866, a learned chancellor remarked that, " it was already becoming difficult for men to carry their minds back and reproduce the condition of things during the period of the war." *Manning* v. *Manning*, 12 *Rich. Eq.* 422. And it is still more difficult now. Independent of the general presumption that the executor had done his duty, (*Turnipseed* v. *Hawkins*, 1 *McC.* 276,) the fact that the executor consulted able counsel, learned in the law, who advised him that he was made by the will the proper judge to decide at what time the property had recovered from its depression, must weigh in the executor's favor. *McDowall* v. *McDowall, Bail. Eq.* 322 ; *Bradley* ads. *Lowry, Spears' Eq.* 7.

As mere matter of fact, it may be that the value of the land has not even yet recovered from the depression caused by the existing war, particularly when reference is had to the witnesses' estimate of its annual rental. But the court cannot, in the absence of fraud charged or proved against the executor, regard this as the test of the validity of the sale or of his liability. Whether as matter of fact and finance, the sale was a wise or unwise exercise of judgment on the part of the executor; as matter of law the court concurs with his legal advice, that the will constituted him the judge of the happening of the event in, and the time at which the sale was to be made. It was a personal confidence and trust reposed in him by the testator ; and the unwise exercise of his judgment is not sufficient authority for the court to set aside his acts and make him responsible for any loss which may have been incurred thereby. *Greer* v. *McBeth*, 12 *Rich. Eq.* 258.

In *Thompson* v. *Wagner*, 3 *Desaus* 97, by a will dated in 1780, testator directed his estate to be sold " in better times "— no power being given therein to executor to sell. The court ordered the property to be sold by the master, *because* the law

was not then in existence authorizing executors to sell when testator had not expressly given it.

In *Atchinson* v. *Robertson*, 3 *Rich. Eq.* 134, the same argument here relied on was urged, that the power to sell conferred by the will upon the executor was conditional only, and that the state of facts justifying the sale was not proved to exist, and that the sale was therefore an unlawful act, to which the court answered that it was within the discretion of the executors.

Whatever liability might attach to the executor on its being made to appear that the exercise of his judgment was not made in good faith, the title of the purchaser would not be affected thereby, unless collusion or guilty knowledge can be traced to him. 2 *Wms. on Ex'rs* 841; *Whale* v. *Booth*, 4 *Term R.* 625, *note.*

As to the sale and payment being made in Confederate money, the facts here develop nothing to take the case out of the ruling of the higher tribunals, state and federal, that an executed contract, a transaction in the ordinary course of civil society, between persons at a time when and a place where the only currency was Confederate money, will not be set aside because the consideration was paid or payable in that currency. *Pope* v. *Chafee*, 14 *Rich. Eq.* 80; *Thorrington* v. *Smith*, 8 *Wall.* 11.

Under the scope of their bill the complainants are however entitled to an account of the executor's administration of the estate. Whether in view of the financial condition of Teague's estate this will avail the plaintiffs anything, is for their consideration exclusively. Entertaining these views, which go to the merits of the entire case, and prætermitting several nice questions discussed as to the proper form and effect of the statute of limitations, which strike me as unnecessary to the solution of the controversy, I find the following facts:

1. That P. L. Calhoun died prior to July 18th, 1863, leaving of force his last will and testament, bearing date August 1st, 1861, wherein he directed " that his executors should sell all his estate, both real and personal, of what nature or quality soever it may be, so soon as the value of property shall recover from the depression caused by the existing war."

2. That Abner G. Teague, one of the executors named therein, alone qualified as executor thereof on July 18th, 1863.

3. That on October 27th, 1863, the said Teague, after due advertisement and public notice in the newspapers, in pursuance of the powers conferred by the will, sold at public outcry to William A. Martin, the highest and last bidder, without objection on the part of any of the devisees and legatees under said will, and conveyed to him for the consideration paid of $32,000 in Confederate money, the price bid, all that tract of land on which the said Patrick L. Calhoun resided up to the time of his death, situated and lying in the county, then district, of Edgefield, State of South Carolina, on the waters of Stephens creek and of Savannah river, and adjoining lands belonging to H. Newson, Edward Howle, C. L. Blair, Sarah Bush and others, containing eighteen hundred and ninety-six and one-half acres, more or less.

4. That said sale, payment and conveyance were fair, formal and *bona fide.*

5. That on January 7th, 1864, Mary A. Calhoun, plaintiff, the widow of P. L. Calhoun, formally released, before W. D. Jennings, notary public, all her interest and estate and also all her right and claim of dower of, in, or to the premises aforesaid to the said William A. Martin.

6. That Abner G. Teague, after having been discharged in bankruptcy, departed this life, and that Narcissa M. Teague is the qualified executrix of his last will and testament.

7. That no final accounting has ever been had of the administration of the estate of P. L. Calhoun by the said Abner G. Teague.

I find the following conclusions of law:

1. That the will vested the qualified executor, Abner G. Teague, with power to decide when the value of property had recovered from the depression caused by the existing war.

2. That the sale and conveyance of the tract of land aforesaid by said executor to William A. Martin for $32,000 in Confederate money and the renunciation by Mrs. Mary A. Calhoun of her interest, estate and dower therein, are valid, and that neither the

said executor or the said Martin can in any manner be held liable therefor. ·

3. The plaintiffs are entitled to an account from Narcissa M. Teague, executrix of the last will and testament of Abner G. Teague, of the said Teague's administration of the estate of P. L. Calhoun, if they desire it.

Wherefore it is ordered, adjudged and decreed that the bill be dismissed with cost as to said William A. Martin, and that plaintiffs have ninety days after the filing hereof, within which to apply for an order referring the matters of account of said Abner M. Teague as said executor to a referee to be appointed.

The plaintiffs appealed.

*Mr. J. P. Carroll,* for appellants, cited *Hill on Trust.* 478 ; 3 *Rich. Eq.* 134 ; 9 *Rich. Eq.* 270 ; 1 *McC. Ch.* 393 ; *Hill on Trust.* 47, *note* 1 ; 13 *Penna. St.* 535 ; 10 *Hare* 290 ; 19 *Jurist* 973.

*Mr. L. F. Youmans,* attorney-general, contra, cited *Perry on Trusts,* §§ 771–785 ; 2 *Wms. on Ex'rs* 839, 840 ; 2 *N. & McC.* 589 ; 3 *Rich.* 421 ; *Rice* 55 ; 1 *Tread. Const. R.* 106 ; 1 *Strob.* 189 ; 1 *Rich. Eq.* 305, 317.

*Mr. M. W. Gary,* in reply, cited 2 *Bla. Com.* \*379 ; 2 *Bay* 255 ; 1 *Desaus.* 589 ; 2 *Id.* 246, 253 ; 1 *Bac. Ab.* 318 ; 2 *N. & McC.* 591 ; *Rich. Eq. Cas.* 405 ; 4 *Desaus.* 522 ; 2 *McC. Ch.* 198 ; 5 *Stat.* 15 ; 6 *Rich. Eq.* 23 ; 1 *Jarm. on Wills* 796–799 ; 2 *Dall.* 317 ; 1 *Tread. Const. R.* 106 ; 2 *N. & McC.* 588; 3 *Rich.* 418 ; 1 *S. C.* 256.

October 15th, 1880. The opinion of the court was delivered by

McIVER, A. J. The principal object of this action was to have the sale of a certain tract of land set aside, the deed given therefor cancelled, and an account from the purchaser for the rents and profits since the sale. Indeed the only question made by the appeal is as to the validity of the sale.

The land in question originally belonged to P. L. Calhoun, who died some time in the year 1863, having first duly made and executed his last will and testament, which bears date August 1st, 1861. The clause of the will which, it is claimed, contains the power of sale under which the executor acted, is as follows: "I desire that my executors, hereinafter to be named, shall sell all my estate, both real and personal, of what nature or quality soever it may be, so soon as the value of property shall recover from the depression caused by the existing war;" and after providing for the payment of his debts and the distribution of the remainder, the testator appointed Dr. A. G. Teague and his son, J. C. Calhoun, executors, the former of whom alone qualified. On the same day that Dr. Teague qualified as executor, he obtained from the Ordinary an order for the sale of the personalty, and on October 27th, 1863, after due advertisement, the whole estate, both real and personal, was sold for cash, in Confederate money, in accordance with the suggestions and advice of the appraisers, and a due return of the sale-bill made to the Ordinary on November 10th, 1863. This sale was attended by many of the parties now seeking to set it aside, some of whom became purchasers to a large amount. No objections appear to have been made to the sale by any of the persons interested under the will, though there is evidence that the plaintiff, W. D. Jennings, who was a creditor of the estate, did object to having the property sold for Confederate money, though his objections do not seem to have been communicated to the defendant, Martin, who was the largest purchaser at the sale, he having bid off the land now in controversy for the sum of $32,000, paid his bid in cash, in Confederate money, and received a deed from the executor. Jennings, also, notwithstanding his objections, became a purchaser at the sale to an amount not inconsiderable, a part of which, however, was, as he says, for the benefit of the widow and part for a young lady to whom he owed some money, while the remainder was for his wife. In about two months after the sale the widow of the testator, before the plaintiff, W. D. Jennings, as a notary public, formally released all her interest and estate, and all her claim of dower in the land sold to Martin, the purchaser at the executor's sale; and some of the parties interested

received from the executor, out of the proceeds of sale, large amounts of money.

It is very clear that at the time all parties interested considered the sale a good and valid sale, and that there is not a shadow of ground for saying that there was any fraud or concealment, or misrepresentation which would tend to invalidate it. On the contrary, all the circumstances go to show that the sale was, at the time, satisfactory to all parties concerned, unless it be W. D. Jennings, who, as a creditor, may be regarded as interested in the estate. But even he, taking all his conduct together, can scarcely be regarded as making any opposition to the sale, but merely expressing a dissatisfaction with the terms of sale by which purchasers were allowed to pay their bids in Confederate money.

But, conceding all this, the validity of the sale is challenged upon the ground of a want of power in the executor to make the sale. *First.* Because there were two executors appointed, and one could not sell even though the other never qualified. *Second.* Because the power to sell was conditional, and as the condition never happened the power never vested. As to the first ground, it is very clear that it cannot be sustained. The very object of the statute (21 *Henry VIII., Ch. IV.,* 2 *Stat.* 457,) which was in force at the time this sale was made, was to obviate this objection. *Britton* v. *Lewis,* 8 *Rich. Eq.* 271.

As to the second ground, it is quite clear that the power of sale was a conditional one, and it is equally clear that the condition was, in its nature, precedent and not subsequent, and that, such being the case, until the condition was performed, or the contingency, upon which the power was conferred, happened, the power could not be lawfully exercised. So that the real question in this case is, whether the contingency upon which the power to sell was given had happened at the time the sale was made, and as subsidiary to this, who was to determine whether the contingency had happened. To solve these questions it will be necessary to inquire what was the nature of the condition. Was it the happening of a distinct and independent fact, or was it a condition, which, in its very nature, involved the exercise of judgment or discretion for the determination of whether it had hap-

pened, and about which, therefore, there might well be, as there was in this very case, honest difference of opinion. It certainly was not a distinct and independent fact, as if the testator had provided that the executor should sell when a certain person should attain to a certain age, but it was a condition, the happening of which could only be determined by an exercise of judgment. When the value of property should recover from a depression caused by a war, or by any other special circumstance, must necessarily be a question to be determined by the exercise of judgment—one about which persons might and probably would honestly differ. What was to be the extent of the recovery which would authorize a sale? Somebody must judge of this, and if the executor is not permitted to do so, then it is difficult to suggest who could. If the executor commits an error of judgment in determining such a question, that, certainly, ought not to invalidate a sale made by him in the honest exercise of his judgment. If it did, then it would be impossible to tell, until after it was tested by a judicial proceeding, whether any sale made under such a power was valid, and if such a rule be established it would destroy all chances of making such a sale, for, certainly, no one would buy with the prospect of having his title inquired into and assailed years after upon the ground that the executor had committed an error of judgment in determining a question which was left to his discretion.

It is perfectly manifest that the testator in this case intended to invest his executor with power to sell in a certain contingency, the happening of which must necessarily be determined by an exercise of judgment, and unless his executor—the person whom he has selected as possessing more of his confidence than any one else—is authorized to determine this question, then the purpose of conferring upon the executor the power to sell would be practically defeated. That purpose, doubtless, was to avoid the necessity of obtaining an order of the court for the sale, which would involve delay and expense; but if the executor is denied the power of determining the time for the sale, or if his honest determination is liable to be revised and reversed by the court, then, clearly, it would have been better to have required a resort to the court in the first instance, rather than to give an apparent

power to the executor which would only serve to delude purchasers and result in greater delay and larger expense than if the will had required a resort to the court in the first instance. That these views are not without the support of authority, may be seen by reference to the case of *Greer* v. *McBeth,* 12 *Rich. Eq.* 254. The cases of *McCants* v. *Bee,* 1 *McC. Ch.* 383, and *South Carolina R. R. Co.* v. *Toomer,* 9 *Rich. Eq.* 270, relied upon by the appellants, do not, in our judgment, conflict with these views. In the former case the question was not really made, but it was suggested that the executor was willing to confirm a contract for the sale of a slave which had been made by the life tenant, abou. which the real controversy was, and the court, among severat other reasons why the executor could not make the sale, said that the power given to the executor was only to sell such property as was useless to the estate, and that the court could not suppose that this conferred a power to sell the slave in question, without assuming, which it would not do, that the executor was willing to commit a fraud, for there was another provision in the will directing the executor to increase the stock of that kind of property by investing the surplus funds of the estate in the purchase of slaves; for if the court were at liberty to suppose that the slave was of such a description as to be useless to the estate, then it would have to suppose that the executor was willing to commit an actual fraud by imposing upon a female property which he knew to be worthless. In the case of Railroad Company *v.* Toomer, the condition upon which the power to sell was given was the happening of a distinct fact, and was not a condition which would have to be determined by the exercise of judgment or discretion.

When, therefore, as in this case, a power of sale is given to an executor, upon the happening of a contingency which can only be ascertained by the exercise of judgment and discretion, and the executor, in the honest exercise of his judgment, determines that such contingency has happened and accordingly makes the sale, such sale cannot be invalidated, even though it should be made to appear, in the light of subsequent events, that the executor had committed an error of judgment in determining whether the contingency had happened upon which he was authorized to

sell. If, however, it should appear that the executor erred wilfully, or from such gross negligence as would imply wilfullness, then it would be different, and the question whether the sale should be allowed to stand, would depend largely upon whether the purchaser had notice of such misconduct upon the part of the executor. In this case, as we have seen, there is no foundation for a suspicion even that the executor acted otherwise than honestly in determining whether the contingency had happened upon which he was authorized to sell, and, therefore, upon the principles above stated there is no ground for invalidating the sale.

The judgment of the Circuit Court is affirmed.

McGowan, A. J., concurred.